### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| Barbara A. Doughty-Reed, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **ORDER OF DISMISSAL** |
| vs. ) | |
| ) | |
| SevenKHUT llc dba Pizza Hut, ) | |
| Russ Klug, and ) | Case No. 1:23-cv-087 |
| Delonne Klug, ) | |
| ) | |
| Defendants. ) | |

This matter is presently before the undersigned for initial review pursuant to 28 U.S.C. § 1915(e)(2). For the reasons that follow, this matter is dismissed without prejudice.

I.   **BACKGROUND**

   A.   **Procedural History**

Plaintiff initiated the above-captioned in forma pauperis with the filing of a pro se Complaint in May 2023. (Doc. Nos. 1, 3, and 4). She claimed that her former employers, SevenKHUT LLC ("SevenKHUT"), Russ Klug, and Delonne Klug, discriminated against her in violation of Title VII of the Civil Rights Act ("Title VII") and the Age Discrimination in Employment Act ("ADEA") in March and April 2022. SevenKHUT is a Pizza Hut franchisee in Dickinson, North Dakota, owned by Russ Klug and his wife, Delonne. (Id.).

On June 5, 2023, Plaintiff filed an Amended Complaint. (Doc. No. 8). The court screened her Amended Complaint pursuant to 28 U.S.C. § 1915(e)(2). Finding that she had failed to exhaust her Title VII claim and had otherwise failed to state cognizable Title VII and ADEA claims, the court issued an order on July 24, 2023, giving her an opportunity to either show cause why this matter should not be dismissed or file a Second Amended Complaint. (Doc. No. 11).

1

On September 9, 2023, Plaintiff filed a Second Amended Complaint in which she reiterated her Title VII and ADEA claims against SevenKHUT and the Klugs. (Doc. No. 14). Her Second Amended Complaint is now the operative pleading and subject to screening pursuant to 28 U.S.C. § 1915(e)(2).

B.  **Factual Basis for Plaintiff's Claims**

Plaintiff claims that she was subjected to a hostile work environment and retaliated against for engaging in protected activity, and otherwise discriminated against in violation of Title VII and/or the ADEA. What follows is a summary of her stated factual basis for these claims.

Plaintiff sent a text message to Russ on March 13, 2022, to advise him that Tracy, a co-worker, had been disregarding company policies and otherwise mistreating employees. (Doc. Nos. 14 at ¶ 8, 14-4).

On March 23, 2022, Plaintiff contacted Delonne to request her assistance because Russ was "refusing to resolve any reports regarding him or [Tracy]," Russ and Tracy "both were interfering with employees at work," and "[w]ork was becoming a hostile environment." (Doc. No. 14 at ¶ 9). She then texted Russ to inform him that she had contacted Delonne. (Id.).

Russ confronted Plaintiff when she reported to work on March 24, 2022, intruding into her personal space, berating her for contacting Delonne, and telling her to never directly contact Delonne again. (Id. at ¶¶ 10 and 11). In the days that followed, Russ stood by as Tracy made disparaging comments about her appearance and otherwise harassed her. (Id. at ¶ 12).

On April 3, 2022, Plaintiff filed a complaint with "corporate" and then informed Russ via text about what she had just done. (Id. ¶ 13).

On April 4, 2022, Russ confronted Plaintiff after she reported to work and falsely accused

her of yelling at his employees.  (Id. at ¶ 14).

On April 9, 2022, as she returned from a delivery, Plaintiff was met by Russ and Tracy, who accused her of yelling at another one of SevenKHUT's delivery drivers.  (Id. at 16).  Plaintiff retreated to her vehicle.  (Id. at ¶ 17).  Tracy trailed after her, "scream[ing]" false accusations and derogatory comments about her age and appearance. (Id. at ¶ 18).

On April 14, 2022, Plaintiff filed a second complaint with "corporate" and then advised Russ by text of her actions.  (Id. at ¶ 20).  On April 26, 2022, she filed a third complaint with "corporate." (Id. at ¶ 22).  That was same day she was confronted at work by Russ, who falsely accused her of yelling at his other employees.  (Id. at ¶ 23).

On May 27, 2022, Russ had employees, Plaintiff included, assemble in a break room and then announced to them that he was terminating Plaintiff's employment because he had received a report that she accosted a front desk clerk at a local hotel the night before when making a delivery. (Id. at ¶¶ 25 and 26).  In the weeks that followed Russ made disparaging comments about Plaintiff to employees, some of whom shared the comments with Plaintiff.  (Id. at ¶ 29).

## II.     STANDARDS GOVERNING § 1915(e)(2) REVIEW

Section 1915(e)(2) provides that, notwithstanding financial eligibility, "the court shall dismiss the case at any time if the court determines that . . . the action . . .  (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). Federal Rule of Civil Procedure 8(a)(2) requires a claim for relief contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]"  To meet this standard, a complaint must include "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly,

550 U.S. 544, 570 (2007); cf. Swierkiewicz v. Sorema N. A., 534 U.S. 506, 515 (2002) ("[T]he Federal Rules do not contain a heightened pleading standard for employment discrimination suits."). In applying the standard, the court must accept the plaintiff's factual allegations as true and make reasonable inferences in the plaintiff's favor. Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)); Jones v. Douglas Cty. Sheriff's Dep't, 915 F.3d 498, 499 (8th Cir. 2019); Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004). On the other hand, the court "is free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." Wiles v. Capitol Indem. Corp., 280 F.3d 868, 870 (8th Cir. 2002). In other words, "[a] pleading that merely pleads labels and conclusions, or a formulaic recitation of the elements of a cause of action, or naked assertions devoid of factual enhancement will not suffice." Hamilton v. Palm, 621 F.3d 816, 817-18 (8th Cir. 2010); see also Dunn v. White, 880 F.2d 1188, 1197 (10th Cir. 1989) (regarding a pro se plaintiff, "we will not supply additional facts, nor will we construct a legal theory for plaintiff that assumes facts that have not been pleaded."). However, in construing a pro se complaint, the Court "will not supply additional facts, nor . . . construct a legal theory for plaintiff that assumes facts that have not been pleaded." Id. (citing Dunn v. White, 880 F.2d 1188, 1197 (10th Cir. 1989)).

### III. DISCUSSION

#### A. Title VII

Title VII prohibits "employer discrimination on the basis of race, color, religion, sex, or national origin, in hiring, firing, salary structure, promotion and the like." Winfrey v. City of Forrest City, Ark., 882 F.3d 757, 758 (8th Cir. 2018). "Title VII [also] prohibits employers from retaliating against an employee who is engaged in a protected activity, which can be either opposing an act of

discrimination made unlawful by Title VII ... or participating in an investigation under Title VII." Hunt v. Nebraska Pub. Power Dist., 282 F.3d 1021, 1028 (8th Cir. 2002); see also Solomon v. Wardlaw Claim Serv., LLC, No. 4:17-CV-92, 2018 WL 3715690, at *3 (N.D. Ind. Aug. 3, 2018) (citing 42 U.S.C. § 2000e-3(a) and Hicks v. Forest Preserve District of Cook County, Illinois, 677 F.3d 781, 787 (7th Cir. 2012), for the proposition that "[u]lawful retaliation in violation of Title VII occurs when an employer takes actions that discriminate against an employee because she has opposed a practice that Title VII forbids, or testified, assisted, or participated in a Title VII proceeding or investigation.").

1. **Exhaustion of Administrative Remedies**

Before a federal court may hear Title VII claims, the claimant must first exhaust her administrative remedies. See Sellers v. Deere & Co., 791 F.3d 938, 943 (8th Cir. 2015) (recognizing that federal anti-discrimination statutes require plaintiffs to file complaints with the EEOC before commencing a suit in federal court); Cottril v. MFA, Inc., 443 F.3d 629, 634 (8th Cir. 2006) ("A Title VII plaintiff must exhaust administrative remedies before bringing suit in federal court. A claimant must first timely file an administrative charge with the EEOC."); Burkett v. Glickman, 327 F.3d 658, 660 (8th Cir. 2003) ("Before the federal courts may hear a discrimination claim, an employee must fully exhaust her administrative remedies."). "Each discrete incident of discriminatory or retaliatory action by an employer is its own unlawful employment practice for which administrative remedies must be exhausted." Murph v. Silver Memories, Inc., No. 8:13CV11, 2013 WL 2147858, at *2 (D. Neb. May 16, 2013). "The reason for requiring the pursuit of administrative remedies first is to provide the EEOC with an initial opportunity to investigate allegations of employment discrimination and to work with the parties toward voluntary compliance

and conciliation." Parisi v. Boeing Co., 400 F.3d 583, 585 (8th Cir. 2005).

To exhaust administrative remedies, the claimant must: (1) timely file a charge of discrimination with the EEOC, setting forth the facts and nature of the charge, and (2) receive notice of the right to sue from the EEOC. 42 U.S.C. §§ 2000e-5(b), (c), (e). Once an individual receives notice of the right to sue, she has ninety days in which to file suit. 42 U.S.C. § 2000e-5(f)(1); see also Stuart v. General Motors Corp., 217 F.3d 621, 630 (8th Cir. 2000) ("In order to initiate a claim under Title VII a party must timely file a charge of discrimination with the EEOC and receive a right-to-sue letter.").

Title VII's exhaustion requirement is a mandatory processing rule, not a jurisdictional prerequisite. Fort Bend Cty., Texas v. Davis, 139 S. Ct. 1843, 1850-51 (2019) ("Title VII's charge-filing requirement is a processing rule, albeit a mandatory one, not a jurisdictional prescription delineating the adjudicatory authority of courts."). The receipt of a right to sue is likewise a statutory prerequisite or condition precedent to bring a discrimination claim, not a jurisdictional prerequisite. See Jones v. Am. State Bank, 857 F.2d 494, 499-500 (8th Cir. 1988) (holding that "receipt of a right-to-sue notice is a condition precedent to a filing of a Title VII claim, curable after the action has commenced"); see also Kent v. Dir., Missouri Dep't of Elementary & Secondary Educ. & Div. of Vocational Rehab., 792 F. Supp. 59, 62 (E.D. Mo. 1992) ("A right-to-sue letter is no longer considered a jurisdictional prerequisite to bringing a Title VII claim, however, receipt of a right-to-sue letter is a statutory prerequisite, that is, a condition precedent to bringing a discrimination suit.").

Failure to exhaust administrative remedies is a deficiency that the court cannot overlook. Walker v. Mo. Dept. of Corr., No. 20-cv-04251-NK, 2022 WL 2007393 at *5 (W.D. Mo. June 6,

2022); see also Wilkie v. Dep't of Health & Hum. Servs., 638 F.3d 944, 948 (8th Cir. 2011) (affirming district court's grant of motion to dismiss Title VII claim due to a failure to exhaust administrative remedies); Renneke v. Astrue, 276 F. App'x 548, 549 (8th Cir. 2008) (affirming sua sponte dismissal based on a failure to exhaust administrative remedies).

In the Charge of Discrimination that she filed with the EEOC, Plaintiff asserted that she "was discriminated against based on her age (YOB 1957) and in retaliation for engaging in protected activity in violation of the Age Discrimination and Employment Act of 1967 . . and [the] North Dakota Human Rights Act . . . ." (Doc. No. 1-3). Notably, she made no mention of Title VII much less claimed that she was a member of a protected class, was treated differently than similarly situated employees, was subjected to harassment because of her membership in a protected class, that her harassment rose to the level that would constitute a hostile work environment under Title VII, or otherwise retaliated against for what would constitute protected activity for purposes of Title VII.

Plaintiff's present Title VII claim it is not "reasonably related" to her original EEOC charge. In her original EEOC charge, she claimed only that she was subjected to discrimination and retaliation on account of her age. She did not claim to have been subjected to race, color, religion, sex, or national origin discrimination. She did not otherwise delineate the protected activity she engaged in for Title VII purposes that allegedly precipitated her termination. See e.g., Ray, No. 4:19-CV-3052 JAR, 2020 WL 1640359, at *3 ("Because a claim of gender discrimination was not considered during the EEOC investigation, nor would one expect a claim of gender discrimination to be investigated based upon plaintiff's failure to mention or detail allegations of such discrimination, plaintiff's gender discrimination claims are dismissed for failure to exhaust

administrative remedies.").

"A plaintiff may not raise in federal court allegations outside the scope of the EEOC charge." Colyer v. Leadec Corp., No. 4:22CV193 JCH, 2022 WL 1453564, at *2 (E.D. Mo. May 9, 2022) (quoting Hatton v. Accord Bldg. Services, L.L.C., No. 4:09CV1888 SNLJ, 2010 WL 2540117 at *1 (E.D. Mo. Jun. 16, 2010)); see also Brooks v. Midwest Heart Grp., 655 F.3d 796, 801 (8th Cir. 2011) ("An employee may not bring allegations in a Title VII action if they go beyond those that could reasonably be expected to grow out of the charge of discrimination filed with the EEOC." (internal quotation marks omitted)). Although an administrative charge is to be liberally construed for exhaustion of remedies purposes, "there is a difference between liberally reading a claim which lacks specificity, and inventing, ex nihilo, a claim which simply was not made." Parisi, 400 F.3d at 585. "[T]o allow 'a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumscribe the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge, as surely as would an initial failure to file a timely EEOC charge.'" Ray v. Health Consultants Inc., No. 4:19-CV-3052 JAR, 2020 WL 1640359, at *3 (E.D. Mo. Apr. 2, 2020) (quoting Williams v. Little Rock Mun. Water Works, 21 F.3d 218, 223 (8th Cir. 1994)); see also Parisi, 400 F.3d at 585 (explaining that claims of employment discrimination in the complaint "may be as broad as the scope of the EEOC investigation which reasonably could be expected to result from the administrative charge.").

This is the case here. Plaintiff did not fairly present her Title VII claim to the EEOC. Consequently, her Title VII claim is subject to dismissal for failure to exhaust.

### 2. Failure to State a Claim

Alternatively, the court finds that Plaintiff has failed to state cognizable claims for hostile

work environment or retaliation under Title VII.

### a.   Hostile Work Environment

"To establish a prima facie case for hostile work environment, a plaintiff must show: (1) she belongs to a protected group; (2) she was subject to unwelcome harassment; (3) a casual nexus exists between the harassment and the protected group status; (4) the harassment affected a term, condition, or privilege of employment; and (5) her employer knew or should have known of the harassment and failed to take proper action." Warmington v. Bd. of Regents of Univ. of Minnesota, 998 F.3d 789, 799 (8th Cir. 2021) (citation and quotations omitted). To establish a causal nexus, a plaintiff must show that the harassment she encountered was connected to her protected status in "character or purpose." Singletary v. Mo. Dep't of Corr., 423 F.3d 886, 893 (8th Cir. 2005) (quoting Luckie v. Ameritech Corp., 389 F.3d 708, 713 (7th Cir. 2004)). "Bare allegations that conduct was the result of a protected status are insufficient." Id. (citing Palesch v. Mo. Comm'n on Hum. Rts., 233 F.3d 560, 567-68 (8th Cir. 2000)).

"At the pleading phase, the court must determine whether the alleged harassment is 'severe or pervasive enough to create an objectively hostile or abusive work environment and the victim must subjectively believe her working conditions have been altered.'" Id. (quoting Blomker, 831 F.3d at 1056); see also Carpenter v. Con-Way Cent. Express, Inc., 481 F.3d 611, 618 (8th Cir. 2007) ("To be actionable, the conduct complained of must be extreme in nature and not merely rude or unpleasant. . . . Allegations of a few isolated or sporadic incidents will not suffice; rather, the plaintiff must demonstrate the alleged harassment was so intimidating, offensive, or hostile that it poisoned the work environment." (internal quotation marks and citations omitted)). The Eighth Circuit explained the "high threshold for a ... harassment claim based on hostile work environment,"

as follows:

> To determine whether a complaint alleges an objectively hostile work environment, the court looks at the "totality of the circumstances." The court may consider circumstances such as the "frequency and severity of the discriminatory conduct," whether the conduct was "physically threatening or humiliating, as opposed to a mere offensive utterance," and whether the "conduct unreasonably interfered with the employee's work performance." A hostile work environment claim must allege more "than a few isolated incidents." The alleged harassment "must be so intimidating, offensive, or hostile that it poisoned the work environment."
>
> The Supreme Court has "cautioned courts to be alert for workplace behavior that does not rise to the level of actionable harassment." The "standards for a hostile environment are demanding, and conduct must be extreme and not merely rude or unpleasant to affect the terms and conditions of employment." Courts must "filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." Even "vile or inappropriate" behavior may be insufficient to rise to the level of an actionable hostile work environment claim.

Warmington, 998 F.3d at 799 (citations omitted).

Here, Plaintiff's pleadings are devoid of any factual allegations to indicate that she is member of a protected class for purposes of Title VII or that the alleged harassment of her employer or coworkers had any connection to her membership in a protected class for purposes of Title VII. Her pleadings are also devoid of any factual allegations to indicate that she was engaged in anything that could constitute a protected activity for purposes of Title VII. She asserts that she was engaged in protected activity and then references her call to Delonne and her complaints to "corporate." However, she does not elaborate on the substance of her call or her complaints other than it concerned "reported issues" with Russ and/or Tracy and "interfering" by Russ and/or Tracy. Absent more, there is nothing to indicate whether the call or complaints concerned any practice made unlawful by Title VII. And there is certainly nothing in her pleadings to indicate that she made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing

under Title VII.

### b. Retaliation

"To establish a prima facie case of retaliation under Title VII, Plaintiff must establish (1) that she engaged in statutorily protected activity; (2) an adverse employment action was taken against her; and (3) a causal connection exists between the two events." Blackwell v. Alliant Techsystems, Inc., 822 F.3d 431, 436 (8th Cir. 2016) (internal quotation marks omitted). The first element can be shown by opposing an act of discrimination that Title VII makes unlawful or by participating in an investigation under Title VII. Lopez v. Whirlpool Corp., 989 F.3d 656, 664 (8th Cir. 2021).

As discussed above, Plaintiff's pleadings are devoid of any factual allegations to established that she was engaged in anything that could constitute a protected activity for purposes of Title VII. Consequently, the pleadings do not establish that Plaintiff engaged in an activity to which Defendants's alleged response would support a retaliation claim. See Lockridge v. HBE Corp., 543 F. Supp. 2d 1049, 1060 (E.D. Mo. 2008) ("[N]ot every complaint about conditions in the workplace, legitimate or otherwise, constitutes a protected activity; retaliation in response to an activity that is not protected does not support a retaliation claim."). The court shall now turn its attention to Plaintiff's ADEA claim.

### B. ADEA

The ADEA "prohibits employers from discriminating against any individual on the basis of age with respect to his or her compensation, terms, conditions, or privileges of employment." Jankovitz v. Des Moines Indep. Cmty. Sch. Dist., 421 F.3d 649, 652 (8th Cir. 2005); see also Rahlf v. Mo-Tech Corp., Inc., 642 F.3d 633, 636 (8th Cir. 2011) (stating that the "ADEA prohibits discrimination against employees, age 40 and over, because of their age"); and Kneibert v. Thomson

Newspapers, Michigan Inc., 129 F.3d 444, 451 (8th Cir. 1997) ("The ADEA prohibits an employer from discharging any individual or otherwise discriminating against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.").

### 1. Exhaustion

Before filing a complaint in federal court alleging violations of the ADEA, a plaintiff must first exhaust her administrative remedies by filing a charge of discrimination with the EEOC.  See Sellers v. Deere & Co., 791 F.3d 938, 943 (8th Cir. 2015); Richter v. Advance Auto Parts, Inc., 686 F.3d 847, 850 (8th Cir 2012);  Parisi v. Boeing Co., 400 F.3d 583, 585 (8th Cir. 2005); see also 42 U.S.C. § 2000e-5(e) and (f) (providing procedures and deadlines for filing charges with the EEOC and, following receipt of a right-to-sue letter, in court); Wilkes v. Washington Univ. School of Medicine, No. 4:06CV1833 MLM, 2007 WL 1040929 at *2 (E.D. Mo. Apr. 3, 2007) ("Exhausting administrative remedies requires timely filing a charge with the EEOC and receiving a right to sue letter.").

As noted above, Plaintiff asserted in the Charge of Discrimination filed with the EEOC that she was discriminated against based on her age and in retaliation for engaging in protected activity in violation of ADEA.  Consequently, she appears to have properly exhausted her administrative remedies with respect to her ADEA claims and that court can move on to consider whether her pleadings are sufficient for purposes of initial review.

### 2. Failure to State a Claim

In order to succeed on an age discrimination claim, a plaintiff must show either direct evidence of discrimination, or evidence that is sufficient to create an inference of discrimination.

Blackwell v. Alliant Techsystems, Inc., 822 F.3d 431, 435 (8th Cir. 2016). If the plaintiff does not offer direct evidence, "she must establish a prima facie case of discrimination by showing that she (1) is a member of a protected class, (2) was qualified, (3) suffered an adverse employment action, and (4) can provide facts that give rise to an inference of unlawful discrimination on the basis of a protected class status." Id.; see also Robinson v. American Red Cross, 753 F.3d 749, 754 (8th Cir. 2014).

Here, Plaintiff's submissions reflect that she is over age forty and can be understood to allege she was appropriately qualified for her position. This is sufficient to show that she qualifies for the protections of the ADEA. However, she has not presented any facts indicating that she has suffered an adverse employment action because of her age. While the court must make all reasonable inferences in Plaintiff's favor, there is nothing here upon which to base an inference. Plaintiff ostensibly asserts that a co-worker used coarse language and derogatorily commented on her appearance, and telling her that she was old. However, she does not assert that Defendants commented on her age or, more importantly, that she suffered an adverse employment action on account of her age. Consequently, she has failed to assert a cognizable ADEA claim.

## IV.   CONCLUSION

The court finds that Plaintiff has not properly exhausted her Title VII claims and otherwise failed to assert claims for which relief can be granted under Title VII or the ADEA. The above-captioned action is therefore dismissed without prejudice.

Dated this 26th day of April, 2024.

/s/ Clare R. Hochhalter
Clare R. Hochhalter, Magistrate Judge
United States District Court